FILED
08-10-2020
CIRCUIT COURT
DANE COUNTY, WI
2020CV001640
Honorable Everett Mitchell
Branch 4

STATE OF WISCONSIN          CIRCUIT COURT          *For Official Use:*

DANE COUNTY

**HELBACHS CAFE LLC,**
1824 Parmenter St.
Middleton, WI 53562

        Plaintiff,

   v.

**City of Madison,**
**County of Dane,**
**Janel Heinrich,**
**Marci Paulsen,**
**and**
**Bonnie Koenig**
                           Case No. 2020-CV-_____

**All individuals in their official capacity**

All Defendants' address:
City-County Building, 210 Martin Luther King Jr.
Blvd. Madison, WI 53703.

        Defendants.

---

### SUMMONS

---

To Defendants, City of Madison, County of Dane, Janel Heinrich, Marci Paulsen, and Bonnie

Koenig (all individuals sued in their official capacity):

     You are hereby notified that the Plaintiff, Helbachs Cafe LLC, has filed a lawsuit or other

legal action against you. The Complaint, which is attached, states the nature and basis of the

legal action.

1



Within forty-five (45) days of receiving this summons, you must respond with a written Answer, as that term is used in Wis. Stat. § 802, to the Complaint. The Court may reject or disregard an Answer that does not follow the requirements of the statutes. The Answer must be sent or delivered to the Court whose address is 215 S. Hamilton St, Madison, WI 53703, and to Levine Eisberner LLC, located at 14 W Mifflin Street #206, Madison, Wisconsin 53703, and to Veterans Liberty Law, located at 519 Green Bay Road, Cedarburg, WI 53012. You are entitled to retain an attorney to assist or represent you.

If you do not provide a proper answer within forty-five (45) days, the Court may grant judgment against you for the award of money or other legal action requested in the Complaint, and you may lose your right to object to anything that is or may be incorrect in the Complaint. A judgment may be enforced as provided by law. A judgment awarding money may become a lien against any real estate you own now or may own in the future and may also be enforced by garnishment or seizure of property.

Dated August 10, 2020

Respectfully submitted,

s/ Joseph W. Voiland
Joseph W. Voiland
**Veterans Liberty Law**
*Attorneys for Plaintiff*
519 Green Bay Road
Cedarburg, WI 53012
Phone: 262.343.5397
State Bar: 1041512

**Levine Eisberner LLC**
*Attorneys for Plaintiff*
14 West Mifflin Street, Suite 206
Madison, Wisconsin 53703

2

BY:

Brent Eisberner
brent@leattys.com
888-367-8198
Wisconsin Bar Number: 1098038

FILED
08-10-2020
CIRCUIT COURT
DANE COUNTY, WI
2020CV001640
Honorable Everett Mitchell
Branch 4

OF WISCONSIN                    CIRCUIT COURT
                DANE COUNTY                              *For Official Use:*

**HELBACHS CAFE LLC
DBA: HELBACHS CAFE ROASTERS &
KITCHEN**

            Plaintiff,

    v.

**City of Madison,
County of Dane,
Janel Heinrich,
Marci Paulsen,
and
Bonnie Koenig
All individuals in their official capacity.**          Case No. 2020-CV-_____

            Defendants.

---

## COMPLAINT

Plaintiff, Helbachs Cafe LLC (hereafter "Helbachs") for its Complaint against

Defendants, City of Madison, et. al. alleges as follows:

### INTRODUCTION AND NATURE OF THE CASE

1.      This case concerns action by the City of Madison and Dane County targeting a

business in retaliation for engaging in political speech against the actions of the City and County.

The business, while still complying with the plain language of the County's Emergency Order,

placed a sign in their window which stated "Mask Free Zone" as a way to demonstrate their

objections to this government policy. This sign was only posted for a short amount of time and

never once did the business require the removal of masks, nor did the posting of this sign violate

the Emergency Order. In fact, Plaintiff issued a public statement that this sign did not match its

actual policies and procedures. *See GoFundMe* Post posted by Helbach's Cafe ("GoFundMe Post") attached herein as Exhibit 1.

2.      Although the sign was quickly removed, word of the sign spread quickly through social media and traditional media and complaints against Plaintiff based on uncorroborated rumors poured in to the County. Still, the Plaintiff was in compliance with the Order.

3.      Conveniently, just days after news of the sign in Plaintiff's window spread online, Dane County issued what was essentially a press release compelling businesses in Dane County to post a particular sign at their place of business. This "requirement" was not part of the original order, nor was it issued as a subsequent order, but again just seemingly appeared in direct response to the speech exercised by Plaintiff as a way to take them out of compliance.

4.      County has now repeatedly fined Plaintiff for failure to comply with this "requirement" found nowhere in any emergency order, resolution or ordinance. In fact, the citations refer to Dane County Ordinance 46.40(2) as "Failure to Post Signage."

5.      Further exercising their assumed authority, the Defendants, through PHMDC, has provided notice of its intention to revoke the food and drink license maintained by Plaintiff attached as Exhibit 4.

6.      This notice of intention to revoke the food and drink license maintained by Plaintiff states, on more than one occasion, that a reason for the revocation was due to the sign posting of politically protected speech stating "mask free zone."

7.      Plaintiffs now face the prospect of unending enforcement actions and an imminent revocation of their food service license as a result of selective enforcement by the Defendants.

2

8.      In an effort to seek clarity on which provision of the Order had been violated, representatives of the county explained that Plaintiffs had violated Section 4.i of Emergency Order 8. Section 4.i requires that all businesses "[a]dhere to the PHMDC requirements and strongly consider implementing the PHMDC recommendations and guidelines." At the time the Order was issued, posting signage was not a "requirement" of PHMDC. This vague, and undefined section seemingly allows PHMDC to avoid issuing subsequent orders to penalize post hoc behavior it does not like, and instead govern by press release. *See* Order §4.i.

9.      Plaintiffs have received three citations and a notice of intent to revoke food and drink licensure.

10.     Defendants issued three citations to Plaintiff, two of which related to the posting of a "required sign." As it relates to the sign, the first citation was issued on 7/15/20 and the second on 7/23/20. *See* Ex. 2 and 3

11.     Less than 5 days after the second citation, the Owner of Helbachs surveyed a number of businesses either attached to, or within a two block radius of, Plaintiff's establishment in Middleton, WI. Of the numerous businesses surveyed, 14 were not in compliance with the sign requirement. Based on information and belief, none of these businesses have received citations.

12.     The harassment by the County goes beyond the issuance of the citations, however. Beyond the citations issued by the County, Plaintiff received a number of contacts and visits from the Defendants, and now faces a potential license revocation proceeding.

13.     It is abundantly clear that PHMDC and other local government officials have determined that Plaintiff must be punished and that they will manipulate their requirements to effectuate their chosen punishment.

3

14.     Defendants have acted without requisite authority per the order, and have done so in a manner that places Plaintiffs in a "class of one" denying them equal protection of the law and instead singling Plaintiff out for punishment as a result of Plaintiff's exercise of its First Amendment protected speech.

## PARTIES

15.     Helbachs is a family owned Wisconsin Limited Liability Company having its principal place of business in Wisconsin. Helbachs is authorized to conduct business in the State of Wisconsin and operates a single location at 1824 Parmenter St. Middleton, Wisconsin 53562.

16.     Plaintiff challenges the enforcement actions by Public Health Madison and Dane County ("PHMDC") through Defendants, City of Madison, County of Dane, Janel Heinrich, Marci Paulsen, and Bonnie Koenig, all in their official capacity.

17.     The City of Madison is Wisconsin city with the capacity to sue and be sued in this Court. Its principal place of business is located at the City-County Building, 210 Martin Luther King Jr. Blvd. Madison, WI 53703.

18.     The County of Dane is a Wisconsin county with the capacity to sue and be sued in this Court. Its principal place of business is located at the City-County Building, 210 Martin Luther King Jr. Blvd. Madison, WI 53703.

19.     Janel Heinrich is an adult resident of the State of Wisconsin and at all times relevant to this lawsuit, Defendant Heinrich was the Director of PHMDC and is sued in her official capacity.

4

20.     Marci Paulsen is an adult resident of the State of Wisconsin and at all times

relevant to this lawsuit, Defendant Paulsen was an assistant city attorney for the City of Madison

and is sued in her official capacity.

21.     Bonnie Koenig is an adult resident of the State of Wisconsin and at all times

relevant to this lawsuit, Defendant Koenig was the Environmental Health Supervisor for

PHMDC and is sued in her official capacity.

## JURISDICTION AND VENUE

22.     This is an action for declaratory and injunctive relief under Wis. Stat. §§ 806.04

and 813.01.

23.     The Court has personal jurisdiction over Defendants pursuant to Wis. Stat. §

801.05.

24.     Venue is proper in Dane County Circuit Court pursuant to Wis. Stat. §801.50

because a substantial part of the events or omissions giving rise to the claim occurred within

Dane County, Wisconsin.

## STATEMENT OF FACTS

### *Emergency Order 8*

1.      On July 7, 2020, Dane County issued Emergency Order 8 (the "Order"), which

among other things requires individuals the age of 5 and older to wear a face covering indoors,

when in line to enter an indoor space, and when driving or riding on public transportation or

other transportation service. However, a mask may be removed for a number of reasons

including when the individual is eating or drinking, and individuals with medical conditions. The

5

Order requires businesses limit their capacity to 50%, develop and implement certain hygiene and cleaning policies, along with other requirements not at issue here.

2.      Businesses are also required to "[p]ost PHMDC's "Workplace Requirements for Employers and Workers" guidance document in a prominent location where all employees may access and view (Available at https://publichealthmdc.com/coronavirus/forward-dane/requirements)." *See* 4.k of the Order.

3.      A visit to the link referenced in Section 4.k of the Order, with one exception, summarizes the requirements included in the Order. The one exception is the addition of the signage requirement added over a week after the Order was issued. *See* PHMDC, "Public Health Requirements for Businesses, Workplaces and Activities" (last visited Aug. 1, 2020).[1]

4.      In addition, the Order requires businesses to "[a]dhere to PHMDC requirements and strongly consider implementing the PHMDC recommendations and guidelines." *See* Section 4.i of the Order.

5.      "Requirements" is not defined by the Order and the term "requirements" is used nearly everywhere else in the Order to refer to specific enumerations included in the Order. *See* The Order, Section 4 ("In addition to complying with Section 4, the following businesses have additional requirements:"); *See Also* Section 4.g.3 of the Order, ("Follow all requirements in Section 5 of this Order"); *See Also* Section 5 of the Order ("In addition to complying with Section 4, the following businesses have additional requirements:").

6.      Nowhere in the Order are businesses required to post the specific "required sign" at issue in this case.

---

[1] Available at https://publichealthmdc.com/coronavirus/forward-dane/requirements

7.      Nowhere in the Order are businesses required to enforce the Order against individuals, whether through refusing service or demanding patrons wear a mask.

8.      In fact, the Order states unambiguously that "People should assume others have valid reasons for wearing or not wearing a face covering. *See* Order p. 1.

9.      In summary, businesses are required to have and implement policies relating to cleaning, hygiene, and a protective measures policy which ensures a business has a policy that people are at least 6 feet from others whenever possible and that employees are provided with and wear face coverings.[2]

10.     Per its terms, the Order "is enforceable by any local law enforcement official. Violation or obstruction of this Order is a violation of Madison Municipal Ordinance Sec. 7.05(6), Dane County Ordinance Sec. 46.40(2) and any subsequent or similar ordinance adopted by a local municipality in conformity therein."

11.     Relevant here is Dane County Ordinance Sec. 46.40(2) which states "It shall be a violation of this chapter to refuse to obey an Order of the Director of Public Health Madison and Dane County entered to prevent, suppress or control communicable disease pursuant to Wis. Stat. § 252.03."

---

[2] The face covering requirement is not required for "[i]ndividuals with a medical condition, mental health condition, or disability that prevents them from wearing a face covering." Section 1.e.iii.2 of the Order.

7

12.     PHMDC claims authority to issue and enforce Emergency Order #8 under the

"Laws of the State, including, but not limited to Wis. Stats. §§ 252.03(1), (2) and (4)." *See* Order

p. 2.

13.     Pursuant to Wis. Stat. § 252.03, local health officers have the following duties:

> (1) Every local health officer, upon the appearance of any communicable
> disease in his or her territory, shall immediately investigate all the
> circumstances and make a full report to the appropriate governing body
> and also to the department. The local health officer shall promptly take all
> measures necessary to prevent, suppress and control communicable
> diseases, and shall report to the appropriate governing body the progress
> of the communicable diseases and the measures used against them, as
> needed to keep the appropriate governing body fully informed, or at such
> intervals as the secretary may direct. The local health officer may inspect
> schools and other public buildings within his or her jurisdiction as needed
> to determine whether the buildings are kept in a sanitary condition.

> (2) Local health officers may do what is reasonable and necessary for the
> prevention and suppression of disease; may forbid public gatherings when
> deemed necessary to control outbreaks or epidemics and shall advise the
> department of measures taken.

14.     Like Wis. Stat. 252.03(2), Wis. Stat. 252.02(6), which governs the authority of the

state Department of Health, both state and local health officials may take all "necessary"

measures to control or prevent communicable diseases. However, unlike Wis. Stat. 252.02(6),

Wis. Stat. 252.03(2) does not provide the same list authorities beyond the ability to "forbid

public gatherings." Wis. Stat. 252.03(2). Further, local health officials only "may forbid public

gatherings when deemed necessary to control outbreaks or epidemics and shall advise the

department of measures taken." *Id.*

15.     The powers granted to the State Department of Health Services are greater (not

less) than those granted to local health officers.

8

16.     With respect to the State Department of Health Services, the Wisconsin Supreme Court has held that the all "necessary" measures language is constrained by the more specific grants of power in Chapter 252, and rejected the Department's attempt to use broadly worded provisions in Chapter 252 to justify the same type of broad restrictions on gatherings and face coverings now put in place by Defendant Heinrich. *See Wisconsin Legislature v. Palm* , 2020 WI 42, 391 Wis.2d 497, 942 N.W.2d 900, ¶¶ 43, 45, 48, 49, 50.

17.     Wis. Stat. §252.03(4) states that "No person may interfere with the investigation under this chapter of any place or its occupants by local health officers or their assistants."

18.     The "investigation" sub (4) relates to the specific duty found in the immediately preceding §252.03(1), wherein the local health officer *shall immediately investigate* all circumstances [of the communicable disease] and make a full report to the appropriate governing body and also the state department.  (Emphasis added).

19.     Importantly, Chapter 252 does not allow for criminal prosecution for violations of local orders, although criminal prosecution was threatened.

20.     Specifically, Wis. Stat. §252.25 states:

> Any person who willfully violates or obstructs the execution of any state statute or rule, county, city or village ordinance or departmental order under this chapter and relating to the public health, for which no other penalty is prescribed, shall be imprisoned for not more than 30 days or fined not more than $500 or both.

9

**Harmless Sign Critical of Emergency Order 8 is Posted in Helbachs Window**

21.      On July 13th, the day Emergency Order 8 went into effect, a sign that said "This is a Mask Free Zone…Please remove mask before entering" was posted in a window at Helbachs . According to a public statement by Helbachs , "This sign was a misrepresentation of our policy because we have no facial covering (mask) policy.  We believe in freedom of expression and welcome patrons with or without a facial covering (mask)."

22.      Helbachs  did not require patrons or employers to remove their masks.

23.      Nothing in Emergency Order 8 prohibited the posting of such signage, nor does it require *a business to enforce the Order against individuals.*

24.      Before the sign was removed by the owners, an individual upset by the presence of the sign posted a picture of the sign to social media along with an allegation that his 6-year-old daughter was shamed for wearing a mask, explaining to a reporter, "We went in with our kids. They went in with masks on and when we went in everyone turned and looked at them. People were laughing asking, 'Don't they know how to read?' and there were a bunch of people pointing and laughing at her.[3]

25.      Concerned with the allegation, the owners of Helbachs  reviewed security footage from the date of the alleged harassment and no such harassment or shaming took place.

26.      The picture of the sign spread quickly on social media, and the story was picked up by numerous media outlets.

27.      As a result hundreds of complaints came in to PHMDC against Helbachs  for violations of the Order even though the posting of the sign was not in violation of the Order.

---

[3] https://www.channel3000.com/picture-circulating-social-media-suggests-helbachs-coffee-in-middleton-is-a-mask-free-zone/.

28.     Upon information and belief many of these complaints were not from actual patrons of Helbachs .

### *Visit from PHMDC*

29.     On or about July 15, 2020, the owner and operator of Helbachs  was at the business premises when Defendants Heinrich and Paulsen approached the business.

30.     Heinrich and Paulsen asked if Casey Helbach was an owner, to which he answered yes.  Defendants stated they had received multiple complaints about the business's "mask policy."  Casey Helbach responded that the business did not have a "mask policy."

31.     Defendants asked why the business did not have a "mask policy."  Casey Helbach responded by producing a copy of Emergency Order #8 which stated "The following Order should not be used as justification to harass or harm another person who is either wearing or not wearing a face covering. People should assume others have valid reasons for wearing or not wearing a face covering."

32.     Janel Heinrich then pointed at Casey Helbach's face and demanded a response as to why he was not wearing a face covering.  Casey Helbach, offended by the inquisition, responded stating that if they are required to assume others have valid reasons for not wearing a face covering, shouldn't the Defendants follow the same policy?

33.     Marci Paulsen then took over the conversation stating "You [Helbachs] don't have any signs stating 'Masks Required' on your storefront."  Casey Helbach responded that the order does not require the posting of any such signs.  Marci Paulsen responded stating, "if you don't post our signs, we will be pursuing legal action against you and may even take away your food and drink license."

11

34.     At this point, feeling harassed and intimidated, Casey Helbach called the local police.  Upon witnessing Casey Helbach calling the police, Marci Paulsen instructed Janel Heinrich that they should leave [the premises] now.

35.     Upon leaving the premises, Defendant Paulsen and Defendant Heinrich exited the business to give oral statements to the waiting local news.[4]

36.     The oral statements by Defendants Paulsen and Heinrich included, "public health officials will now move on to enforcement actions against the business," and "When they refuse to accept education, refuse to comply with the orders, then we would be looking at issuing citations… We will also be looking at whether the (food and drink) license will be affected and whether it will be suspended."[5]

### *The New Sign Requirement*

37.     Just days after the picture of the "mask free zone" sign went viral, and after failing to find any substantiated violations of the Order, PHMDC issued a new sign "requirement" via what could be described generously only as a press release.

38.     Unaware of the sign requirement due to lack of notice, Helbachs did not post the newly "required" sign.

---

[4] https://www.jsonline.com/story/news/politics/2020/07/16/middleton-coffee-shop-defying-mask-order-calls-police-health-inspector/5453375002/
[5] https://wkow.com/2020/07/15/protesters-health-officials-converge-on-middleton-coffee-shop/

12

39.     On 15 July, 2020, PHMDC issued a citation to Helbachs for $263.50 which referenced Dane County Ordinance 46.40(2) and was designated as a "Failure to Post Signage." *See* Ex. 2.

40.     After the issuance of the citation, Helbachs surveyed numerous businesses within a one to two block radius of Helbachs and witnessed approximately 14 businesses that did not have the newly "required" sign.

41.     In response to issuance of the citation, Helbachs started a Go Fund Me page with language critical of policy and actions taken by Defendants. The Go Fund Me page is intended to be used for legal expenses in order to "fight for freedom and the unlawful orders from Madison & Dane County Public Health."[6] *See* Ex. 1.

42.     The creation of the Go Fund Me page received attention from the media.[7]

43.     About 24 hours after the Go Fund Me page was created, Helbachs received another citation from PHMDC, again totaling $263.50 and reference a violation of Dane County Ordinance §46.40(2)  "Failure to Post Signage." *See* Ex. 3.

44.     Along with the second "Failure to Post Signage" citation, Helbachs also received a third citation from PHMDC, again totaling $263.50 and references a violation of 46.40(2) "Asking an individual to remove her face covering."  *Id.*

45.     Helbachs does not know if this individual exists.  PHMDC has refused to provide any information as it relates to the allegation, and the review of the security footage on the alleged date shows no such interaction occurring.

---

[6] https://www.gofundme.com/f/2q2fy8-helbachs-coffee-freedom-fund?fbclid=IwAR1odxK-zdvG8aIAZ1SxMzrLy_2IL4H_wlSBVtwBYJYGM65M5F1McC_rwpo

[7] https://www.channel3000.com/coffee-shop-fined-for-violating-dane-co-mask-order-launches-gofundme-to-challenge-citation/

### *Phone Call with City Attorney*

46.     On 7/28/2020, Plaintiffs were asked to participate in a conference call meeting with PHMDC and city of Madison officials.

47.     On this phone call, Plaintiff requested information as it related to the citations. Plaintiff was told that PHMDC did not have the name of any individuals who allege Plaintiff, or their employees, requested the removal of masks.

48.     Plaintiff asked where the requirement for sign postings were in the order, to which Janel Henrich stated it was "in the order" and later pointed to Section 4.i. Janel Henrich, after further questioning on this topic, stated the requirement could instead be found on the website.

49.     Janel Henrich, and corporate counsel, stated that they did not wish to discuss any arguments regarding the order and/or its enforcement and those issues could be addressed "through briefings." Janel Henrich then stated that PHMDC was looking for a resolution.

50.     Plaintiff asked what a resolution would "look like." Janel Henrich stated it would be absolute "compliance with the order" and any additional "requirements" of PHMDC. Janel Henrich continued, stating that if Helbachs was not fully compliant, she would consult with corporate counsel and PHMDC to evaluate their statutory authority and potential enforcement actions.

51.     Defendants Heinrich and Paulsen previously stated to media that further enforcement actions would result in an attempt to revoke Plaintiff's licensure to conduct its business at the premise.

52.     In completion of this threat, Janel Heinrich served Plaintiff with a "Notice of Intent to Revoke License." ( "Notice Letter"). *See* Ex. 4

14

53.     The Notice Letter stated, as its first allegation in support, Helbachs

constitutionally protected speech that the premises was a "mask free" zone violated the Order.

54.     Further allegations in the Notice Letter contained statements that employees and

patrons of the premises were "witnessed inside the facility without masks" in violation of the

order, although the order unambiguously states individuals not wearing a face covering are

presumed to have a valid reason for not wearing such face covering.

### *PHMDC Moves to Revoke Food and Drink License*

55.     On August 3, 2020, Plaintiff, received a "Notice of Intent to Revoke License"

("Notice Letter") letter issued by Heinrich dated July 31, 2020. *See* Ex. 4.

56.     The Notice Letter stated Heinrich was seeking revocation under DCO §46.33(5)

based upon the alleged failure to comply with DCO §46.40(2).  DCO §46.40(2) states "It shall be

a violation of this chapter to refuse to obey an Order of the Director of Public Health Madison

and Dane County entered to prevent, suppress or control communicable disease pursuant to Wis.

Stat. §252.03."

57.     The basis for the alleged violations are: 1) the protected political speech of

Plaintiff by posting of a sign stating Helbachs was a "mask free zone," 2) the multiple allegations

of witnessing of patrons and employees inside the establishment not wearing a mask—although,

by the order, it should be assumed these individuals have a valid reason to not wear a face

covering, 3) the refusal to display post-hoc "requirements" of signage, and 4) an alleged—but

unsubstantiated—statement that someone was required to remove their face covering for an

unknown reason.

58.     To avoid revocation of the licensure, the Notice Letter demanded compliance with

Dane County Emergency Order #8, demanded the silencing of protected political speech in the

form of barring Plaintiff's establishment from posting any signage related to the establishment being "mask free," demanded the additional posting of the newly "required" face covering signage, and "encouraging customers" to comply with the face covering "requirement" although it is to be assumed individuals have valid reasons not to wear a covering.

## CLAIM FOR RELIEF

### CLAIM 1: Defendants Do Not have Authority to Enforce Signage Requirement Under Emergency Order 8

59.     Wisconsin Statutes allow for local public health officials to investigate circumstances related to communicable disease in his or her territory, inspect public schools and other public buildings as it relates to their sanitary conditions, and forbid public gatherings. *See* Wis. Stat. §252.03(1), (2).

60.     While a local public health official may do "whatever is necessary" for the spread of communicable disease, nowhere in Emergency Order #8 is there a requirement to post the specific signage at issue in this case.

61.     Even if Emergency Order #8 contained language to post a specific sign, Defendants lack legal authority to require such posting.

62.     Dane County Ordinances (hereafter "DCO") fair no better in the requirement for sign postings.

63.     DCO §46.40(2) sates: *Public Health Orders*. It shall be a violation of this chapter to refuse to obey an Order of the Director of Public Health Madison and Dane County entered to prevent, suppress or control communicable disease pursuant to Wis. Stat §252.03.

16

64.     Nowhere in DCO §46.40 is there a requirement to post any signage, nor is there a reasonable inference that posting signage is required to "prevent, suppress and control communicable diseases within Dane County."

65.     Just as the Wisconsin Supreme Court decided in *Palm*, the all measures "necessary" language intended to prevent, suppress, and control communicable diseases is limited.

66.     The specific grant of power to local health officers, such as Janel Heinrich, is limited: they may "forbid public gatherings." *See* Wis. Stat. §252.03(2).

67.     The powers granted to the State Department of Health Services are greater (not less) than those granted to local health officers.

68.     Wis. Stat. 252.03(3) states:

> "If the local authorities fail to enforce the communicable disease statutes
> and rules, the [state] department shall take charge, and the expenses thus
> incurred shall be paid by the county or municipality.

69.     With respect to the State Department of Health Services, the Wisconsin Supreme Court has held that the all "necessary" measures language is constrained by the more specific grants of power in Chapter 252, and rejected the [State] Department's attempt to use broadly worded provisions in Chapter 252 to justify the same type of broad restrictions on gatherings and face coverings now put in place by Defendant Heinrich. *See Wisconsin Legislature v. Palm* , 2020 WI 42, 391 Wis.2d 497, 942 N.W.2d 900, ¶¶ 43, 45, 48, 49, 50.

17

**CLAIM 2: The County's Vindictive Action Against Helbachs Violates the Guarantees of Equal Protection under the Constitutions of the United States and the State of Wisconsin**

70.     All persons are guaranteed equal protection under the United States and Wisconsin Constitutions.  The Fourteenth Amendment of the United States Constitution provides: "No state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

71.     The Wisconsin Constitution similarly provides: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed." Wis. Const. art. I, § 1.

72.     The Wisconsin Supreme Court has tied its interpretation of the equal protection clause of the Wisconsin Constitution to the federal interpretation of the equal protection clause in the Fourteenth Amendment, labeling the Wisconsin equal protection clause the functional equivalent of the equal protection clause of the Fourteenth Amendment. *See Reginald D. v. State*, 193 Wis. 2d 299, 306 (1995); *See all County of Kenosha v. C. & S. Management, Inc.* 223 Wis. 2d 3737 (1999).

73.     The United States Supreme Court has held that '[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quoting *Sioux City Bridge Co., supra,* at 445, 43 S.Ct.)"

74.      The Court "ha[s] recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.*

75.      In violation of the requirements imposed by the Constitution, the Defendants have created a "class of one" by treating Plaintiffs differently than all other similarly situated businesses by only enforcing a the signage requirement against Plaintiff, despite a number of other businesses within a 1 to 2 block radius of Plaintiff having failed to comply.

76.      Defendants intentionally treated Helbachs differently from other who are similarly situated to Helbachs and there is no rational basis for the difference in treatment.

77.      Defendants' punishment of Helbachs for failure to post signage, despite no legal requirements to do so, and despite failing to require others similarly situated to do so, was irrational and wholly arbitrary.

## CLAIM 3: Violation of the First And Fourteenth Amendment

78.      The First Amendment to the United State Constitution provides, "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise therefore; or abridging the freedom of speech, or the of the press, or the right of the people to peaceably assembly, and to petition the Government for a redress of grievances."

79.      The First Amendment's free-speech guarantee applies to the State's through the Fourteenth Amendment. *Gitlow v. New York*, 268 U.S. 652 (1925).

80.      The First Amendment prohibits government officials from "subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (citation omitted).

19

81.     Plaintiffs alleging retaliation and penalization for protected speech must demonstrate three factors: (1) that they engaged in activity protected by the First Amendment; (2) that they suffered a deprivation that would likely deter First Amendment activity; and (3) the First Amendment activity was at least a motivating factor in the [official's] decision. *See Nieves*, 139 S. Ct. at 1724.

82.     The posting of the "Mask Free Zone" sign in the window of Helbachs was speech unquestionably protected by the First Amendment.

83.     The United States Supreme Court has recognized, social media is, for many, the "principal source[] for …speaking and listening in the modern public square." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1732 (2017).

84.     The speech by Helbachs does not meet the definition of speech excluded from First Amendment protection. The speech was not obscene, defamatory, or a true threat, and it did not incite violence. *See United State v. Alvarez*, 567 U.S. 709, 717 (2012).

85.     The Supreme Court has long recognized that "a realistic threat of arrest is enough to chill First Amendment rights," *Hodgkins ex rel. Hodgkins v. Peterson*, 355 F.3d 1048, 1056 (7th Cir. 2004) (listing cases); e.g., *Steffel, 415 U.S. 452*, and that people need not "expose [themselves] to actual arrest or prosecution" to bring a First Amendment challenge to such threats, *Steffel*, 415 U.S. at 459.

86.     The posted sign was only visible for a mere 30 minutes, did not reflect the actual policy of Helbachs and was not enforced by Helbachs. Rather, it was intended as purely a statement of disagreement with Government policy.

87.     Nearly 15 other businesses within a one to two block radius of Plaintiff had not posted the "required" sign. None of those same businesses publicly participated in protected speech critical of PHMDC's emergency order.

88.     Defendants, through PHMDC, by fiat, and in direct response to this protected speech and without issuing a new order, created a new "requirement" via press release, created a violation for "Failure to Post Signage" under an Ordinance which does not require signs to be posted,  just so they could issue a citation in response to Helbachs speech.

89.     Beyond actually issuing citations, Helbachs  has been threatened with revocation of their food service licensure for failing to post the proper sign. There is no question that Defendant's citations and attempts to revoke the establishments food and drink license are a sufficient "deprivation" to violate the First Amendment.

90.     Finally, the speech by the Plaintiff was at least partially a factor in the decision by the officials as the sign requirement was issued just days after the speech was exercised, and no other business near Helbachs was cited although they were not in compliance with the sign requirement.  Additionally, the Notice Letter listed, more than once, the speech by Plaintiff was a factor for citations and the intent to revoke the food and drink license.

21

**CLAIM 4: The County/City Requirement to Post Signage Constitutes an Unconstitutional Taking Protected Under the 5th Amendment of the Constitution of the United States.**

91.     The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation."

92.     The Takings Clause "is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference amounting to a taking." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536–37 (2005).

93.     The Takings Clause bars government actors "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).

94.     "The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Pennsylvania Coal Co. v Mahon*, 260 U.S. 393, 415–16 (1922).

95.     The Order impacted Plaintiff's use of their property to such an extent that, at least temporarily, the Order diminished economically beneficial use of the business property.

96.     The selective enforcement of the Order has now lead to an intent to revoke Plaintiff's food and drink license, diminishing the economically beneficial use of the business property.

97.     The Order constitutes a regulatory taking of property with respect to Plaintiff, requiring just compensation under the Takings Clause of the Fifth Amendment.

WHEREFORE, Plaintiff requests the following relief:

1.  A declaration that Helbachs  has not violated any lawful provision of Emergency

    Order 8.

2.  A declaration that any citations issued were done so invalidly.

22

3. An injunction prohibiting Defendants from continuing to unlawfully and selectively enforce the signage requirement.

4. A preliminary injunction pending trial, and a permanent injunction upon judgment, restraining and enjoining the Defendants, and all other persons in active concert or participation with them, so that they will not bring any enforcement, criminal, licensing, or other actions against Plaintiff, and will take positive action to ensure that the constitutional rights of the Plaintiffs as set forth in the action are protected and not infringed.

5. An award of Plaintiff's damages for the violation of Plaintiff's constitutional rights.

6. An award for just compensation for the regulatory taking of Plaintiff's property.

7. An award to Plaintiff for the reasonable costs and expenses of this action, including reasonable attorney's fees.

8. Such other relief as the Court deems just and proper.


Dated this 10th day of August, 2020.

Respectfully submitted,

s/ Joseph W. Voiland
Joseph W. Voiland
**Veterans Liberty Law**
*Attorneys for Plaintiff*
519 Green Bay Road
Cedarburg, WI 53012
Phone: 262.343.5397
State Bar: 1041512

**Levine Eisberner LLC**
*Attorneys for Plaintiff*
14 West Mifflin Street, Suite 206
Madison, Wisconsin 53703
BY:

Brent Eisberner
brent@leattys.com
888-367-8198
Wisconsin Bar Number: 1098038

24

FILED
08-10-2020
CIRCUIT COURT
DANE COUNTY, WI
2020CV001640
Honorable Everett Mitchell
Branch 4

# Exhibit 1

# Helbachs Coffee Freedom Fund





**$10,000** raised of $50,000 goal

**207** donors   **3.3K** shares   **206** followers

**Share**

**Donate now**

Angela Boynton
$28   15 hrs

Jessica Glass
$25   1 d

Sheryl Rayner
$100   2 d

Kirsten Lombard
$50   2 d

Anonymous
$100   2 d

See all          See top donations

Casey Helbach is organizing this fundraiser.

Created July 22, 2020   |   ♡ Other

**About Us:**
Helbachs Coffee is a family company started by longtime residents of Madison,
Wisconsin. We are a small-batch coffee roaster and bakery, emphasizing quality coffee
and family recipes.

**Overview:**
Madison & Dane County Public Health is trying to impose on us its illegal Order #8.
Madison & Dane County Public Health Order #8 requires all persons in public and
private business to wear facial coverings. Helbachs believes that this order is unlawful
and should be opposed in court. We are not against the public's safety but rather
against Madison & Dane County Public Health infringing on our constitutional rights.
For the reasons stated above, we will not only be contesting the citation/notice we
received on July 20th, 2020, for $263.50 (Exhibit A), July 23rd for $527 (Exhibit B),
and the NOTICE OF INTENT TO REVOKE LICENSE from Dane County Public Health
on August 3rd (Exhibit C). We will also be filing suit against Madison & Dane County
Public Health.

**Timeline:**
July 13, 2020: A picture went viral, stating "mask-free zone" posted on the front door
of Helbachs Coffee Middleton. This sign was a misrepresentation of our
policy because we have no facial covering (mask) policy. We believe in freedom of
expression and welcome patrons with or without a facial covering (mask).

July 15: Helbachs Coffee was visited by representatives of Madison & Dane County
Public Health to "educate" the owners on facial coverings. The owners felt more
harassed then educated during this visit by public officials.

July 18: Following this confrontation by Madison & Dane County Public Health, there
was a pro-mask protest against Helbachs Coffee.

July 20: Helbachs received a cordial letter "warning" us that if we don't require our
employees and patrons to wear a mask, we will be fined.

July 21: Helbachs was cited for "failure to post signage stating mask required."

July 23: Helbachs was cited again for, "failure to post signage stating mask required."

August 3: The Dane County Sheriff served Helbachs Café, LLC with a NOTICE OF
INTENT TO REVOKE LICENSE from Dane County Public Health.

**Funding the Freedom Fund:**
(1) Donate on GoFundMe
(2) Write a Check to Helbachs Cafe, LLC, in the memos note, "legal defense fund." Mail
the check to P.O. Box 45195 Madison, WI 53744.

**Usage of Freedom Funds:**
All funds donated will be utilized for legal expenses to challenge the citation Helbachs
received and fight for our constitutional rights for freedom. If we raise more than
enough to cover Helbachs Coffee legal fees the surplus will be used to set up a legal
defense fund for other local business owners to fight for freedom and the unlawful
orders from Madison & Dane County Public Health.

Thank you for your support.

FILED
08-10-2020
CIRCUIT COURT
DANE COUNTY, WI
2020CV001640
Honorable Everett Mitchell
Branch 4

**WISCONSIN CITATION AND COMPLAINT (NON TRAFFIC)**
Ordinance/Alcohol/Tobacco/Harassment
Sporting Event/Safety/Drug Paraphernalia
UW Rule Violations

☐ Juvenile

P 426931

**You Are Notified To Appear**
Is this a mandatory appearance? ☐ yes ☒ no
(Read the reverse side of this citation for court information.)
on Sept. 18, 2020 at 10:00 ☐ am ☒ pm   Circuit Court

Dane County
315 S. Hamilton St
Rm 1A
Madison WI 53703

Plaintiff: ☐ City ☐ Village ☐ Town ☒ County
OF: Dane
☐ State of Wisconsin   ☐ Board of Regents

| Week Day | Month - Day - Year | Time | |
|---|---|---|---|
| Wed | 7-15-2020 | 12:30 | ☐ AM ☒ PM |

Citation Served: ☒ Personally ☐ Mailed to defendant's last known address
☐ Left with person residing at defendant's residence.

Print Officer Name
Deputy S. Albano   Brachhausen #Madison on Dane Co.

GF-116, 04/22

**Defendant Name - Last** Veterans Gate LLC   First   MI

**Street Address** PO Box 45145   Post Office Madison   State WI   Zip Code 53744

**Driver License Number or Other I.D. (specify)**   State   Exp. Yr.

| Date of Birth | Sex | Race | Height | Weight | Hair | Eyes |
|---|---|---|---|---|---|---|

**Defendant Violated:** (check only 1 violation.)
☐ 125.07(4)(a)  ☐ 254.92(2)  ☐ 961.573(2)
Ordinance No. DG 40 (8)  ☐ 125.07(4)(b)  ☐ 947.013(1m)  ☐ 961.574(2)
☐ UWS ____  Adopting State Statute ☐ 125.085(3)(b)  ☐ 167.32  ☐ 961.575(2)
☐ 125.09(2)

**Description of Violation:**
Failure to post suitable erosion control Measures Bilt-U-K

At 6501 Pinkerton St Middleton WI
County Dane  City/Village/Town Middleton
Age

**Name & Address of Parent/Guardian/Legal Custodian**
(if minor defendant)   Emergency Erosion Bilt-U-K

Department   I.D. No.   Date Citation Issued 7-14-2020

**Telephone Number of Parent/Guardian/Legal Custodian**

* Deposit Permitted ☐ cash ☐ card  $ 263.50

(For Court Use Only)

**DEFENDANT'S COPY: READ NOTICE ON BACK**



# MASK REQUIRED

## Masks are required in this space to help prevent the spread of COVID-19.

## Thank you for your cooperation.

### SE REQUIERE EL USO DE MÁSCARA

Debe usar máscaras en este espacio para ayudar a prevenir la propagación de COVID-19. Gracias por su cooperación

### YUAVTSUM HNAV DAIM NTAUB NPOG NTSEJ MUAG

Yuavtsum hnav daim ntaub npog ntsej muag thaum nyob qhov chav no kom tsis txhob kis tus kab mob COVID-19. Ua tsaug rau txhua tus uas ua raws cai.

### 必須佩戴口罩

在此空間內必須要佩戴口罩，以幫助防止傳播COVID-19。

謝謝您的配合。

Public Health

# WORKPLACE REQUIREMENTS
## For employers and workers

For the safety of workers, customers and our community, all businesses are required to implement policies around hygiene, cleaning and protective measures. See our Current Order page for the latest Order.

### Your employer is required to provide information to you on these COVID-19 policies

As an employee, you should receive information or training from your employer on the following:

- Monitoring and reporting illness
- Proper hand washing
- How to cover coughs and sneezes
- Cleaning of high touched surfaces
- Physical distancing of 6 feet
    - Amongst workers
    - Between worker and customer
    - Customer line management

### Your employer is required to provide you with personal protective equipment (PPE) required for jobs where physical distancing of 6 feet is not possible

See our current order for the latest PPE requirements.

PPE varies for different jobs including:

- Face coverings
- Glove use
- Eye protection

### You are expected to do your part by following these policies

As an employee, it is important to follow these polices to prevent the spread of COVID-19.  Following these policies means that you will be:

- Self-monitoring for illness prior to reporting to work each day and not reporting to work when ill
- Reporting symptoms, positive diagnosis, or exposure to COVID-19 to the person-in-charge
- Washing hands often and covering mouth and nose with a tissue when coughing or sneezing
- Performing the scheduled cleaning using EPA approved disinfectants effective against COVID-19
- Physical distancing to the extent possible at the workplace
- Using the required PPE to the extent that you are able

### Reporting non-compliance at the workplace

The best combination of controls to protect from exposure to COVID-19 in the workplace are physical distancing policies, heightened hygiene practices, and PPE.  While it is impossible to eliminate the risk of COVID-19 exposure in your facility, the implementation of these policies provides important and scientifically proven public health safeguards. If you feel that your employer is not implementing these policies in your workplace, please let us know by calling (608) 266-4821 (English) or (608) 243-0380 (Spanish) or emailing compliance@publichealthmdc.com.

### Access this fact sheet online: publichealthmdc.com/documents/workplace_requirements.pdf



Public Health
MADISON & DANE COUNTY

FILED
08-10-2020
CIRCUIT COURT
DANE COUNTY, WI
2020CV001640
Honorable Everett Mitchell
Branch 4

**WISCONSIN CITATION AND COMPLAINT (NON TRAFFIC)**

Ordinance/Alcohol/Tobacco/Harassment
Sporting Event Safety/Drug Paraphernalia
UW Rule Violations

☐ Juvenile

* Deposit Permitted ☐ cash
☐ card
$ 263.50

P 426933

**You Are Notified To Appear**

Is this a mandatory appearance? ☐ yes ☒ no
(Read the reverse side of this citation for court information.)
on Sept 18, 2020 at 10:00 pm (am)

Circuit Court

OF: Dane County
215 S. Hamilton St.
Madison WI 53703

Plaintiff: ☐ City ☐ Village ☐ Town ☒ County
OF: Dane
☐ State of Wisconsin   ☐ Board of Regents

Week Day | Month - Day - Year | Time
Mon. 7-20-2020 | 1:00 | ☐ AM ☒ PM

Citation Served: ☒ Personally ☐ Mailed to defendant's last known address
☐ Left with person residing at defendant's residence:

Print Officer Name

GF-116, 0402

Defendant Name - Last    First    MI
Mc@ours Cafe LLC

Street Address          Post Office       State    Zip Code
30 Bush 45175          Madison            WI      53714

Driver License Number or Other I.D. (specify)       State    Exp. Yr.

Date of Birth | Sex | Race | Height | Weight | Hair | Eyes

Defendant Violated: (Check only 1 violation.)
☐ 125.07/4(a)   ☐ 254.92(2)     ☐ 961.573(2)
☐ 125.07/4(b)   ☐ 947.013(1rn)  ☐ 961.574(2)
☐ 125.085(3)(b) ☐ 167.32        ☐ 961.575(2)
☐ 125.09(2)

Ordinance No. 616.40(8)
☐ UWS
Adopting State Statute:

Description of Violation:

At: 3220 Parmenter St, Middleton, WI
County Dane    City/Village/Town Middleton
Name              I.D. No.     Age

Department           Date Citation Issued
                     7/23/2020

DEFENDANT'S COPY: READ NOTICE ON BACK

Name & Address of Parent/Guardian/Legal Custodian
(if minor defendant)

Telephone Number of Parent/Guardian/
Legal Custodian

## WISCONSIN CITATION AND COMPLAINT (NON TRAFFIC)

☐ Ordinance/Alcohol/Tobacco/Harassment
☐ Sporting Event Safety/Drug Paraphernalia
☐ UW Rule Violations

**P 426934**

| | * Deposit Permitted | (For Court Use Only) |
|---|---|---|
| | $ 263.50 | ☐ cash ☐ card |

### You Are Notified To Appear

Is this a mandatory appearance? ☐ yes ☒ no
(Read the reverse side of this citation for court information.)

on Sept 18 2020 at 10:00 pm ☒ am

Circuit Court OF: Dane

State of Wisconsin ☐   ☐ Board of Regents

Plaintiff: ☐ City ☐ Village ☐ Town ☒ County OF: Dane

Madison WI 53703

215 S. Hamilton St

Dane County

**Defendant Name - Last**  Hellenbahs Cafe LLC  ☐ Juvenile

**Street Address**  PO Box 45195

**Driver License Number or Other I.D. (specify)**

**Post Office** Madison  **State** WI  **Zip Code** 53744  Exp. Yr.

| Date of Birth | Sex | Race | Height | Weight | Hair | Eyes |
|---|---|---|---|---|---|---|

**Defendant Violated:** Wi. Viol(s)

**Ordinance No.** Wi. Viol(s)

(Check only 1 violation)
☐ 125.07(4)(a)  ☐ 254.92(2)  ☐ 961.573(2)
☐ 125.07(4)(b)  ☐ 947.013(1m)  ☐ 961.574(2)
☐ 125.085(3)(b)  ☐ 167.32  ☐ 961.575(2)
☐ 125.09(2)

☐ State  ☐ UWS

Adopting ☐
State ☐
Statute ☐

**Description of Violation:** Failure to post signage in violation of emergency order 8 sec. 4. At 3834 Parmenter St Middleton, WI in violation of Emergency Order 8 sec. 4.

**Name & Address of Parent/Guardian/Legal Custodian** (if minor defendant)

City/Village/Town Middleton  County Dane

Department HPPSC  I.D. No.  Date Citation Issued 7/23/2020  Age

**DEFENDANT'S COPY: READ NOTICE ON BACK**

### Week Day / Month - Day - Year / Time
Thurs 7-23-2020

Citation Served: ☒ Personally ☐ AM ☐ PM
☐ Left with person residing at defendant's residence.
☐ Mailed to defendant's last known address

Name

Print Officer Name

GF-116, 04/02

FILED
08-10-2020
CIRCUIT COURT
DANE COUNTY, WI
2020CV001640
Honorable Everett Mitchell
Branch 4


# Public Health
**MADISON & DANE COUNTY**

*Healthy people. Healthy places.*

Phone (608) 266-4821
Fax (608) 266-4858
www.publichealthmdc.com

## NOTICE OF INTENT TO REVOKE LICENSE

TO: Helbachs Café LLC
c/o Casey Helbach, Registered Agent
6993 Applewood Dr.
Madison, WI 53719-4948

YOU ARE HEREBY NOTIFIED that pursuant to Dane County Code of Ordinances (DCO)

§46.33(5), that I, Janel Heinrich, the Public Health Officer for Madison and Dane County, intends

to seek revocation of Food and Drink License No. LICFDD-2019-00019, issued by Public Health

Madison Dane County on February 20, 2019, for operation of Helbachs Coffee Roasters &

Kitchen, located at 1824 Parmenter St, Middleton, Wisconsin (hereinafter referred to as the

"regulated facility").

DCO §46.33(5) authorizes the public health officer to seek revocation of an operator's

permit for failure to comply with any provision of the Dane County Ordinances.  The basis for

the requested revocation is violation of Dane County Code of Ordinances §46.40(2) that states

"It shall be a violation of this chapter to refuse to obey an Order of the Director of Public Health

Madison and Dane County entered to prevent, suppress or control communicable disease

pursuant to Wis. Stat. §252.03."      Commencing on July 13, 2020 the operator of the

regulated facility has engaged in repeated violations of Emergency Order #8 issued by the

Public Health Officer for Madison and Dane County on July 7, 2020 and effective July 13, 2020,

pursuant to Wisconsin Statutes §252.03(1), (2) and (4), to wit:

July 31, 2020
Page 2

1. On July 13, 2020 a sign was posted on the door of the regulated facility stating it was a "mask free zone" and directing that masks should be removed upon entry. Employees and customers were witnessed inside the premises without masks. All in violation of Paras. 1(e)(i)1 and 4(d)(ii) of Emergency Order #8.

2. On July 14, 2020, employees and patrons were witnessed inside the regulated facility without masks in violation of Paras. 1(e)(i)1 and 4(d)(ii) of Emergency Order #8.

3. On July 15, 2020, employees and customers were witnessed inside the regulated facility without face coverings in violation of Paras. 1(e)(i)1 and 4(d)(ii) of Emergency Order #8. A PHMDC employee attempted to educate the manager/owner present at the regulated facility regarding face covering requirements. Said person stated that he had no intention of complying with the PHMDC Order regarding face coverings, and refused to post signs provided by PHMDC regarding "Workplace Requirements for Employers and Workers" in violation of Para. 4(k) of Emergency Order #8, he further refused to post a sign informing customers that face coverings are required in enclosed buildings in violation of Para. 4(i) of Emergency Order #8.

4. On July 20, 2020, a customer entered the regulated facility wearing a face covering and was asked to remove said face covering by an employee in violation of Para 1(e)(i)1 of Emergency Order #8. Said customer witnessed employees and customers inside the regulated facility without masks in violation of Paras. 1(e)(i)1 and 4(d)(ii) of Emergency Order #8.

5. On July 21, 2020, employees and customers were witnessed inside the regulated facility without face coverings in violation of Paras. 1(e)(i)1 and 4(d)(ii) of Emergency Order #8. A

July 31, 2020
Page 3

PHMDC employee asked the manager/owner present at the premises the required signage be posted. Said person stated they needed to bring it to the board. No signage informing customers that face coverings are required in enclosed building was observed.

6. On July 23, 2020, employees and customers were witnessed inside the regulated facility without face coverings in violation of Paras. 1(e)(i)1 and 4(d)(ii) of Emergency Order #8.  A PHMDC employee attempted to educate the manager/owner present at the premises regarding face covering requirements.  Said person refused to post signs provided by PHMDC regarding "Workplace Requirements for Employers and Workers" in violation of Para. 4(k) of Emergency Order #8, he further refused to post a sign informing customers that face coverings are required in enclosed buildings in violation of Para. 4(i) of Emergency Order #8.

7. On July 24, 2020, employees and customers were witnessed inside the establishment without masks in violation of Paras. 1(e)(i)1 and 4(d)(ii) of Emergency Order #8. The manager/owner refused to post signs provided by PHMDC regarding "Workplace Requirements for Employers and Workers" in violation of Para. 4(k) of Emergency Order #8, he further refused to post a sign informing customers that face coverings are required in enclosed buildings in violation of Para. 4(i) of Emergency Order #8.

To avoid revocation the Licensee must comply with PHMDC Emergency Order #8 and subsequent orders entered pursuant to Wis. Stat. §252.03 and Governor Evers' Emergency Order #1 requiring face coverings and subsequent, including:

1.  Requiring all employees to wear a face covering at all times indoors.

2.  Refraining from posting or communicating that the premises is a "mask free zone".

July 31, 2020
Page 4

    3. Posting a sign on the door of the premises advising customers of the face covering requirement under PHMDC Orders.

    4. Encouraging customers to comply with the face covering requirement.

    5. Posting PHMDC's "Workplace Requirements for Employers and Workers" guidance document in a prominent location where all employees may access and view.

    You have a right to a hearing before the Board of Health for Madison and Dane County. At the hearing, you can represent yourself or hire an attorney.  You or your attorney will have the right and opportunity to cross-examine witnesses called by Public Health Madison and Dane County and to call witnesses to testify on your own behalf.  Within ten days of the hearing, the Board of Health for Madison and Dane County is required to issue a written decision regarding any action it takes with regard to your food and drink license(s).

    YOU ARE FURTHER NOTIFIED that a hearing on revocation of Food and Drink License No. LICFDD-2019-00019 will be held before the Board of Health for Madison and Dane County on August 25, 2020, at 10: 00 a.m. Parties will appear via video or telephone conferencing. Instructions to join the hearing are provided with this notice.

You may participate by using the following URL from a computer web browser:

https://global.gotomeeting.com/join/636275621

The password is #BOH0825!

July 31, 2020
Page 5

You may also call by phone to the following number:

United States (Toll Free): 1 877 309 2073

United States: +1 (646) 749-3129

**Access Code:** 636-275-621

Any documents or exhibits you intend to submit to the Board for consideration should be filed

by August 21, 2020 by submitting to the following e-mail: PHBOHSupport@cityofmadison.com

Dated this 31st day of July, 2020.

Janel Heinrich
Health Officer, Public Health Madison & Dane County